**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

FLORIDA WILDLIFE
FEDERATION, INC. et al.,

      Plaintiffs,

v.                               CASE NO.  4:08cv324-RH/CAS

BOB PERCIASEPE, etc., et al.,

      Defendants.

_____/

**ORDER AUTHORIZING A STAY OF THE DPV
PROVISIONS BUT DENYING A STAY
<u>OF THE LAKE AND SPRING PROVISIONS</u>**

The defendant Administrator of the Environmental Protection Agency has

moved for authority to stay provisions included in a rule enacted under a consent

decree entered by this court.  The grounds for the motion include the possibility

that the provisions will be repealed in deference to rules adopted by the State of

Florida Department of Environmental Protection ("FDEP").  This order authorizes

a stay of provisions that will not be duplicated in the prospective state rules—that

is, provisions establishing downstream protection values for unimpaired waters.

But the order rejects a stay of provisions that are nearly identical to the prospective

state rules—that is, provisions establishing criteria for lakes and springs.  The

effect of a stay of those provisions would be to delay implementation of criteria

that the Administrator and the FDEP both agree are appropriate.

I

The Administrator issued a report in 1998 addressing the widespread

nutrient pollution of the nation's waters.  The report said that by December 31,

2003, states should adopt numeric nutrient criteria to replace the existing narrative

criteria, which were not working.  The FDEP began work on numeric nutrient

criteria by 2001, if not earlier.  When no criteria had been formally proposed or

adopted by 2008, the plaintiff environmental organizations filed this lawsuit,

demanding that the Administrator step in.  The plaintiffs contended that the Clean

Water Act required the Administrator to do so.

On January 14, 2009, the Administrator did what she had been saying since

2004 she might do: she explicitly exercised her statutory authority to determine

that a new Florida water-quality standard—a standard using numeric nutrient

criteria—was necessary to meet the Clean Water Act's requirements.  The

determination imposed on the Administrator an explicit statutory duty to promptly

propose a revised or new standard and to adopt it within 90 days after publication,

unless by that time the state adopted a revised or new standard and the

Administrator approved it.  33 U.S.C. § 1313(c)(4).  A substantial group of

intervenors contested the validity of the Administrator's determination.

In August 2009, the plaintiffs and the Administrator agreed to a consent

decree setting deadlines for the Administrator to propose and adopt a revised or

new standard for Florida unless the state did so first.  On December 30, 2009, after

full briefing and oral argument, I entered the consent decree.  It set deadlines in

two phases.  The deadline for the Administrator to propose criteria for lakes and

flowing waters was January 14, 2010, and the deadline for the Administrator to

sign a notice of final rulemaking for those waters was October 15, 2010.  The

deadline for the Administrator to propose criteria for coastal and estuarine waters

was January 14, 2011, and the deadline for the Administrator to sign a notice of

final rulemaking for those waters was October 15, 2011.  The United States Court

of Appeals for the Eleventh Circuit dismissed an appeal from the consent decree.

The Administrator sought and obtained various extensions of consent-decree

deadlines, sometimes with the plaintiffs' consent, and sometimes to allow the state

more time to attempt to adopt its own numeric nutrient criteria.  The Administrator

proceeded under the consent decree in two phases, as the consent decree

contemplated, but the Administrator moved flowing waters in the South Florida

region from the first phase to the second, that is, to the phase dealing with coastal

and estuarine waters.

The Administrator proposed and adopted rules setting numeric nutrient criteria for lakes, springs, and flowing waters outside the South Florida region. The criteria included separate downstream protection values ("DPVs") for impaired and unimpaired waters.  Parties on opposite sides challenged the rules as too lenient or too stringent in various respects.  By an order entered on February 18, 2012, the lake and springs criteria were upheld, as were the DPVs for impaired waters, but the criteria for flowing waters and the DPVs for unimpaired waters were held invalid.  The lake and springs criteria and the DPVs for impaired waters took effect on January 6, 2013.

In late 2012 the Administrator proposed rules replacing the invalidated provisions and setting numeric nutrient criteria for coastal and estuarine waters and South Florida flowing waters.  The deadline for the Administrator to sign a notice of final rulemaking for the replacement provisions is August 31, 2013.  The deadline for the Administrator to sign a notice of final rulemaking for coastal and estuarine waters and South Florida flowing waters is September 30, 2013.

The Administrator's pending motion to stay would render ineffective until November 15, 2013, the lake and springs criteria and the DPVs for impaired waters.  The motion would not affect the deadline for final adoption of the Administrator's replacement provisions and rules for coastal and estuarine waters and South Florida flowing waters.

II

An order was entered on May 30, 2012, granting over opposition the Administrator's request to extend some of the consent-decree deadlines. The order said, "The defendants should take note: the effort that began in 1998 to establish numeric nutrient criteria for Florida waters must be completed. The defendants should not expect a further extension." Order of May 30, 2012, ECF No. 395 at 1-2.

On November 21, 2012, the Administrator filed a motion to extend the deadlines yet again, by 120 days, including the November 30, 2012, deadline to sign for publication proposed rules for waters not subject to rules already proposed or adopted. The Administrator gave this explanation for the requested extension: FDEP recently advised EPA that FDEP had "tentative plans" to adopt its own numeric nutrient criteria for waters not covered by FDEP's earlier proposals. The Administrator said that she was prepared to issue proposed rules by November 30 if an extension was not granted. The plaintiffs opposed the extension.

The requested extension was denied by an order entered on December 3, 2012. The order said that "tentative plans" provided too slender a reed on which to base yet another extension of deadlines that had already been long delayed. It had been nearly three years since the Administrator's explicit determination that a revised or new standard was necessary—the determination that triggered the

statutory duty to "promptly" propose a revised or new standard and to adopt it within 90 days after it was proposed.  The order concluded:

> The May 30 order had it right.  The effort to establish numeric nutrient criteria for Florida waters must be completed.  Anything that could be accomplished with another 120-day extension could have been accomplished without it.  The Administrator has not shown good cause for a further extension.

Order of December 3, 2012, ECF No. 412 at 4.

### III

The Administrator now asks not to delay the deadlines for proposing or adopting rules but to delay the effective date for rules already adopted and upheld. The order upholding the rules is on appeal to the Eleventh Circuit, but no party has moved for or obtained a stay pending appeal.  No party asserts the appeal provides a basis for a stay.

In support of the proposed stay, the Administrator and the state and industry parties correctly note the burden that results from regulatory uncertainty.  Putting in place criteria that will soon be repealed or superseded may be appropriate when the alternative is to leave entities free to degrade water quality.  But when other means exist to control degradation, the burden of unnecessary regulatory change can make a stay appropriate.

Still, the reasoning set out in the December 3, 2012, order applies here as well.  Anything that could be accomplished with a delay until November 15, 2013,

could have been accomplished by now. Indeed, it seems likely that the FDEP and State of Florida have acted—and propose to take further action—at least partly because of the Administrator's actions and the consent-decree deadlines. Extending the deadlines and staying the provisions already in effect seem likely to render less certain, not more certain, the prospect of timely and definitive state action setting clear and effective criteria.

Even so, a stay is appropriate for the Administrator's DPVs for impaired waters. The FDEP has proposed an alternative approach that will not mirror the Administrator's rule, and the Administrator anticipates approving the alternative approach. The ultimate adoption of the alternative approach is not a certainty, but on balance, the best course now is to approve the proposed stay of the DPVs. This does not leave entities free to degrade water quality, because other narrative and numeric provisions remain in place that address nutrient pollution of all waters. The stay will avoid implementation of provisions that may not—and if the Administrator and State of Florida do what they say they expect to do, will not— remain in effect beyond November 15, 2013.

The same is not true of the Administrator's lake and spring criteria. Those criteria are nearly identical to the state criteria the FDEP has proposed and that the Administrator and State say they expect to become effective. Leaving the Administrator's rule in place will not require an entity to conform to criteria that

may soon be repealed or superseded.  To the contrary, leaving the Administrator's rule in place will require compliance with the criteria that are now in effect and that all sides expect to be in effect on November 15, 2013, and beyond, under either a federal or state rule.  A stay, in contrast, would delay the effective date of criteria that both the Administrator and FDEP now say are appropriate.

For nearly 15 years, the Administrator has said numeric nutrient criteria must be adopted.  For most of that time—at least 10 years—the FDEP has agreed. The criteria that this order leaves in effect are some of the long-delayed numeric nutrient criteria.  Further delay is unwarranted.

For these reasons,

IT IS ORDERED:

The motion to stay, ECF No. 414, is GRANTED IN PART and DENIED IN PART.  The Administrator and Environmental Protection Agency may stay until November 15, 2013, the provisions setting downstream protection values for impaired waters.   Authority to stay the other provisions setting numeric nutrient criteria for lakes and springs is denied.

SO ORDERED on April 12, 2013.

s/Robert L. Hinkle
United States District Judge