UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


CASE NO. 4:08-cv-00324-RH-WCS


FLORIDA WILDLIFE FEDERATION, INC.;
SIERRA CLUB, INC.; CONSERVANCY
OF SOUTHWEST FLORIDA, INC.;
ENVIRONMENTAL CONFEDERATION
OF SOUTHWEST FLORIDA, INC.; AND
ST. JOHNS RIVERKEEPER, INC.

       Plaintiffs,

v.

LISA P. JACKSON, Administrator of the
United States Environmental Protection
Agency; and THE UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,

       Defendants.
_____/

**CONSERVATIONISTS' MOTION TO ENFORCE THE CONSENT DECREE**

Florida Wildlife Federation, Inc., Sierra Club, Inc., St. Johns Riverkeeper, Inc., Conservancy of Southwest Florida, Inc., and Environmental Confederation of Southwest Florida, Inc. (collectively, "Conservationists") respectfully move this Court to order the U.S. Environmental Protection Agency ("EPA") to sign for publication forthwith a final federal rulemaking regarding numeric nutrient criteria for all inland flowing waters, and all South Florida waters and estuarine waters by September 30, 2013, as required by the Consent Decree.

Under the Consent Decree, as modified by the Court, EPA is currently required to publish final rules setting forth "numeric water quality criteria" for nutrients for: (1) all Class I and III "lakes and flowing waters" outside of the South Florida Region, including numeric default downstream protective values ("DPVs") for unimpaired lakes, no later than August 31, 2013; and (2) all Class I and III "lakes and flowing waters" in the South Florida Region, and all Class I, II, and III "coastal and estuarine waters" no later than September 30, 2013. *See* ECF Nos. 153, 351, 395, 404. Under the Consent Decree, nutrient water quality criteria must consist of "numeric values." Exh. 14: Consent Decree at p. 4.[1] Unlike Total Maximum Daily Loads ("TMDLs"), which are site-specific, numeric criteria apply across geographic regions and classes of waterbodies. In contrast, a narrative standard requires a site-specific study for each waterbody. While Florida Department of Environmental Protection's ("DEP") nutrient rule for flowing waters includes a nutrient "threshold" for streams expressed in concentrations that cover five regions of the state, the "thresholds" serve only as supplemental information for site-specific studies. No determination of violation or compliance can ever be made without a site-specific study. Those DEP rules are not numeric nutrient criteria. Thus, EPA's conditional approval[2] of the DEP rule does not relieve EPA of its obligation[3] to set numeric nutrient criteria for flowing waters.

---

[1] EPA is excused from implementing numeric nutrient criteria for those waters for which DEP has adopted, and EPA has approved, numeric values for nutrient water quality criteria. ECF No. 153 ¶¶ 7, 9. Please note that exhibits for Conservationists' Response to Motion to Modify, Response to Motion for Stay, and this Motion to Enforce are numbered consecutively to avoid duplication. Accordingly, exhibits are only attached to one of these three documents and are referenced by a single number in all three.

[2] *See* ECF No. 413-1, p. 3.

[3] EPA's Motion to Modify Consent Decree asserts specifically that if the motion were granted, EPA's remaining obligations would be limited to estuaries and coastal waters. ECF No. 424 at p. 20.

The DEP rule for flowing waters also excludes intermittent streams from the coverage of the rule. These streams total over 8,000 miles. EPA's motion to modify contends that if the court were to approve its proposed modifications to the Consent Decree then EPA's obligations would be fulfilled as to all flowing waters in Florida. The DEP rule does not cover intermittent streams. For that reason, EPA remains obliged to finalize numeric nutrient criteria for all inland flowing waters in Florida.

## **LEGAL STANDARD**

Since a consent decree is a "form of contract," courts will interpret such decrees using the same rules that generally apply to the interpretation of a contract. *Reynolds v. Roberts,* 202 F.3d 1303, 1312 (11th Cir. 2000). When interpreting a consent decree, courts will look first to the document itself. *Sierra Club v. Meiberg*, 296 F.3d 1021, 1030 (11th Cir. 2002). Only if a provision in the consent decree is ambiguous will the court look to extrinsic evidence to determine the parties' intent. *Reynolds*, 202 F.3d at 1312. Consent decrees "should be interpreted as written," and not expansively interpreted to require whatever might be necessary to best effectuate the "overarching purpose" of the laws allegedly violated. *Meiberg*, 296 F.3d at 1312.

**I. FLORIDA DEP'S "THRESHOLDS" FOR FLOWING WATERS THAT WERE CONDITIONALLY APPROVED BY EPA ARE NOT NUMERIC CRITERIA AND DO NOT SATISFY EPA'S OBLIGATIONS UNDER THE CONSENT DECREE.**

The Consent Decree requires EPA to finalize rulemaking setting forth numeric nutrient criteria for Florida's flowing waters unless EPA approves state criteria before the EPA rule is finalized. Exh. 14, pp. 4-5, at ¶ 3, 4, 6, 7. The DEP rule for flowing waters consists not of a numeric criterion for phosphorus and nitrogen, but of a complex set of requirements for site-

specific studies of algae and aquatic plants ("Floral Measures"[4]), site-specific studies of the diversity and abundance of particular aquatic insects (the insect assessment measure referred to as the Stream Condition Index, or "SCI"[5]), along with a review of whether the particular water body exceeds one of the "Nutrient Thresholds." Rule 62-302.531(2)(c), F.A.C. These "thresholds" are the same phosphorus and nitrogen numbers proposed as numeric criteria in the proposed EPA rule for flowing waters. 77 Fed. Reg. 74985 at 74999, attached as Exh. 27. In contrast with the EPA rule, the Florida DEP rule's decisional matrix sets out 27 possible outcomes based on three sets of information—the Floral Measures, the SCI, and the nitrogen and phosphorus concentration levels. The color-coded matrix, shown in Exhibit 26, on page 23 of the plan for "Implementation of Florida's Numeric Nutrient Standards" is incorporated by reference as part of Rule 62-302.300(19), F.A.C. The decisional matrix shows boxes shaded red in circumstances where the standard is not attained. No decision of non-attainment can ever be made without a site-specific study[6] that demonstrates that a Floral Measure is not attained (*see* bottom row of chart) or a site-specific study showing that the aquatic insect assessment (SCI) fails. Similarly, the decisional matrix shows boxes shaded blue in circumstances when the standard is attained. No decision of attainment of the standard can ever be made absent site-specific studies employing at least the site-specific Floral Measures (*see* top row with squares shaded in blue).

---

[4] "Implementation of Florida's Numeric Nutrient Standards" at pp. 8-16, incorporated by reference as part of Section 62-302.300(19), F.A.C., attached as Exh. 26.
[5] Exh. 26, pp. 16-21.
[6] The DEP Implementation Plan, Exhibit 26 at p. 15, provides that if the study samples are during "typical conditions for the system," the narrative standard is not attained if the geometric mean of chlorophyll a samples is over 20 ug/L in more than year in three years. This is a numeric standard for a response variable – algae concentrations – but is not a numeric *nutrient* criterion because it only indicates that either phosphorus or nitrogen or both are too high.

4

Since the numeric limits on phosphorus and nitrogen cannot be used to determine compliance or violation without site-specific studies, they are not numeric water quality criteria – they are only supplementary information that goes along with site-specific studies. Thus, EPA's conditional approval of the Florida DEP streams rule does not relieve EPA of it obligation to set numeric nutrient criteria for flowing waters.

## II. EPA'S CONDITIONAL APPROVAL OF THE STATE FLOWING WATERS RULE DOES NOT SATISFY ITS CONSENT DECREE OBLIGATIONS BECAUSE THE STATE RULE EXCLUDES INTERMITTENT STREAMS FROM ITS DEFINITION.

The Consent Decree defines the waters requiring numeric criteria as "inland surface waters that have been classified as Class I or Class III waterbodies [under state rules] excluding wetlands." Exh. 14: Consent Decree, ¶4, p.4 (bracketed material supplied). No other exception to flowing waters is set out in the Consent Decree and EPA's pending motion to modify the Consent Decree does not seek to exclude intermittent streams.

The DEP rules conditionally approved by EPA specifically define the term "stream" to mean a stream with "perennial flow." Rule 62-302.200 (36) F.A.C. A "perennial stream" is defined by the United States Geological Survey ("USGS") as a stream that "contains water throughout the year except for infrequent periods of severe drought." *See* USGS National Hydrography Dataset ("NHD") Feature Directory, *available at* http://nhd.usgs.gov/FeatureDirectory.pdf. Intermittent streams, in contrast, contain "water for only part of the year but more than after rainstorms and at snow melt." *Id.* Thus, the state rule for flowing waters—conditionally approved by EPA—does not apply to non-perennial streams, *i.e.*, intermittent streams. This conclusion is confirmed by a DEP email that explains that ephemeral and intermittent streams were omitted from final coverage of the DEP rule

5

conditionally approved by EPA. *See* Exh. 16, Email from Justin Berke to Kimberly Jackson (5/6/13).

Further, it cannot be argued that these waters are wetlands. The USGS NHD identifies intermittent streams as a subset of flowing waters. Exh. 15: Darina Palacio Declaration. The NHD stream classifications are based on the original 1:24,000-scale United States Geological Survey topographic maps. As shown on these maps, the United States classifies wetlands (blue plants) and intermittent streams (dashed blue lines) as separate categories of waters.

The USGS quadrangle map for Holt, FL is an example of this. There are intermittent streams that are unconnected to wetlands, intermittent streams that run through wetlands, and intermittent streams that disappear into wetlands. Exh. 28: USGS Topographical map.[7] These features are readily apparent upon a closer inspection of the confluence of the Yellow and Shoal Rivers. Exh. 15C: Enlargement of Holt USGS Map (attached to Declaration). In grid 9, an intermittent stream, designated with blue dashes alternating with blue lines, passes through a wetland before reaching a perennial stream that branches into the Yellow River. In grid 8, an intermittent stream originates and continues through a wetland before ending in the Yellow River. In grid 5 and 8, an intermittent stream is shown as going from Claypit to the Yellow River without ever going through a wetland. In grid 7, Wilkinson Creek ends in a wetland that is adjacent to the Yellow River. *Id.* The intermittent stream and the wetland are always shown as separate waters.

In April 2012, EPA's consultant determined that there were 8,421 miles of intermittent streams in Florida that would be exempted from numeric nutrient criteria by DEP's intermittent streams exception. Exh. 3: EPA Tetratech Study, p. 4. Additionally, Conservationists'

---

[7] *Available at*: http://ims.er.usgs.gov/gda_services/download?item_id=5624996&quad=

consultant, using a recently updated NHD dataset, identified and mapped 8,710 miles of intermittent streams in Florida. This dataset was overlaid onto a USGS quad map to make the intermittent streams clearly visible. Exh. 15: Palacio Declaration; Exh. 15A & 15B: Map of Intermittent Streams across all of Florida & Map of Intermittent Streams in Holt quadrangle (both attached to Declaration). However, EPA has not sought to exclude the intermittent stream miles in its Motion to Modify the Consent Decree. Instead EPA's motion asserts that only estuaries and coastal waters remain to be set. ECF No. 424 at pp. 19-20. EPA's obligation to establish numeric nutrient criteria for intermittent streams remains unfulfilled.

## CONCLUSION

WHEREFORE, for the reasons set out above and those set out in Conservationists' Response in Opposition to the Motion to Modify Consent Decree, Conservationists respectfully move this Court to enter an order enforcing the Consent Decree by ordering EPA to forthwith finalize rules establishing numeric nutrient criteria for all Class I and Class III inland flowing waters in Florida.

RESPECTFULLY SUBMITTED this 30th day of July, 2013.

/s/ David G. Guest
DAVID G. GUEST
Fla. Bar No. 0267228
Monica K. Reimer
Fla. Bar No. 0090069
111 S. Martin Luther King Jr. Blvd.
Tallahassee, Florida 32301
Phone: (850) 681-0031
Facsimile: (850) 681-0020
*COUNSEL FOR CONSERVATIONISTS*

---

Holt&state=FL&grid=7.5X7.5&series=Map GeoPDF.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court using CM/ECF on this 30th day of July, 2013 and was electronically served via CM/ECF on all counsel of record.

      /s/ David G. Guest
Attorney